The proceedings below contain numerous errors that we ask this Court to reverse. First, with respect to Mr. Hunt's personal retaliation claim against Officer Fields. Officer Fields' great summary judgment, which we believe was a clear error. Second, Mr. Hunt represented himself at trial for his personal retaliation claim against Officer Rios. There were numerous legislative errors in that trial that the jury's verdict in Mr. Rios' favor. But if I may, I'd like to start with the summary judgment claim, because I do think it's what we believe the primary argument on our appeal. It is a case we believe is on all fours with this Court's decision to hit Bruce Fields. In that case, the Court held that a misjustification for prison guard's acts to stop warrant summary judgment when there was disputed evidence of retaliatory motive. That is exactly the evidence that Mr. Hunt presented in opposition to Officer Fields' summary judgment motion. The standard, the relevant standard for retaliatory motive as set forth in this Court's decision to broadly decry is whether or not Mr. Hunt's protective conduct here, his grievance that he filed, was a substantially motivating factor behind Officer Fields' conduct. So you're not, essentially what the Supreme Court said was, he was following directions, and even if the person who appeared for the directions had a retaliatory motive, that motive was to appeal to her. That's correct. You're not suggesting that as such, I can't hear you. What? You're not, is the appealing motive you're saying superior to her? That's correct, Your Honor. No, we're not asking you to impute the motive. But what we are saying is that the fact that she was ordered to document gang activity, the fact that she was instructed about Mr. Hunt's false claims, does not preclude a finding of motive in this case. And that's such what the district court held. But it may not preclude a finding of motive, but what goes to your evidence that it was retaliatory motive? So the grievance itself. So the grievance was about Mr. Hunt's individual classification as a male blood gang member, but it was also about the person's failure to follow prison procedures with respect to validating gang numbers. No, that's a lie. Correct. So the response to the question is, as I said, what was his grievance? It's a substantially motivating factor behind the chronology file. The chronology file itself references some of his grievance. It talks about the fact that he's been denied that he's a blood gang member. It also talks about the fact that it's gang activity from two years prior. Right? It's not about, like, the gang activity that she had seen recently. It was two years prior plus two years. She had observed Mr. Hunt's affiliate associated with gang members, and, therefore, he is a gang member. But, yes, the question is, what was the purpose of this crime? She was told to fill it out. I'm struggling to figure out how a retaliatory motive can be attributed to her, even if it's not consistent with the department policy in terms of what this turned into, because it's clear that she's denied that she was talked to by Rios, and that's presumably where she had the information that your client was trying to get out from under this identification as a blood. That still doesn't say that she was doing this simply because your client had spoken out or attempted to exercise First Amendment rights. So what is her retaliation? I mean, I think her retaliation is, well, in this case, I mean, the standard for motive is pretty, it's not substantial, right? It's a substantial motivating factor. And it's essentially undisputed in this case that the reason for Crono was his grievance. The reason why it's retaliation is because you were an intellectual property lawyer. In class action. Class action lawyer. All right. Let me tell you as a trial judge, you know, it kind of better issue going to the jury instructions than you do on the subject. So I don't know if you can understand. I'm sorry. The jury instructions are the case against Officer Rios. Okay. Okay. You're on. So the jury instructions in this case, the main one that I think is the error is the chilling effect instructions. Yes. The chilling, in this court, there are at least two or three opinions that talk about what an inmate or what any person that are retaliatory plaintiff has to prove. It's not an actual sort of like statement. It's not whether or not they themselves have, in fact, had some sort of speech. It's a judge's statement with an ordinary inmate or ordinary person. I understand if there is case law that says that there are other possible injuries or just that you would have to be a judge. That's correct. I think Breland itself says there just has to be more than minimal harm, which is what I've said to the jury. And so there is, because of the clause that was filed, and he continues to be on this blood gang affiliation list, it's used to support his blood gang affiliation, and because of that, he's got a markdown often. And I think in the record, he's written this declaration that, I don't know, it's been 55 days. So why isn't that enough? Why don't we get the children out? I mean, why shouldn't the instructor, well, you didn't ask for it. I guess maybe it's the answer. But he wanted an objection to the children's defense standard, but it's even possible that you could have it. It seems that the standard could be broader than that, just does he, in fact, have an injury. He's locked down. What he would otherwise be seems to be a sufficient injury, whether it showed anybody or not. I agree with that. I think that's absolutely right. That's not what he has. I think so far as we have a problem about waiver or non-waiver, he did articulate this other requirement. Yes, that's very true. As the jury's verdict did not tell us, they didn't believe that he was incorrectly associated with the bloods. I'm struggling here. What we're talking about here is the identification. And he can challenge the identification. So far he's challenged it unsuccessfully. I'm having trouble figuring out, in reality, what the separate First Amendment claim is all about. Well, I mean, the First Amendment claim doesn't set a response to his First Amendment complaint. But what really matters is whether or not he's accurately assigned this gang tag, this identification as being associated with the bloods. There are ways to deal with that separately. And apart from a First Amendment claim, I'm struggling here to figure out what real injury there is coming out of the First Amendment context. Well, I think the real injury is that, I mean, that's what I'm hoping makes clear, as Bruce makes clear, you know, the same action could be proper if taken for a different reason. Right? What First Amendment retaliation is about is what was in the steps called in response to the First Amendment. I think where we'd be is associated with the bloods. This whole thing seems to me to fall apart because Rios' motivation can be explained. I know you're associated with the bloods. I'm not going to let you get away with your effort to get out from under that. That's not First Amendment retaliation. That's going directly to the substantive issue of whether or not he should be tagged as a blood associate. Right, right. But I'll say that it stands to whether or not he's a member of the bloods. Mr. Hunt maintains throughout this example, though, throughout the receipts below that he's not a member of the bloods. But there are ways to attack that, and those attacks have never been successful. I don't think he intended to attack that directly. I thought some of the words he was going to say. I'm sorry, say it again. I thought at several occasions he did prevail on his claim that he was not associated with the bloods. Well, he prevailed previously on whether or not there was a successful grievance that he had filed with the person himself, and then he filed a claim with a district court based on that successful grievance. Since the episode, the issue here, has he continued to be listed as being a gang associate? I just heard. Has he made any efforts to get out from under that listing? I believe he has, Your Honor. Maybe those are more grievances. Have any of those efforts been successful? No, that's all I know, Your Honor. No. Well, I guess, in fact, your point was the harm here. The harm is he files a grievance about his death, not follow up procedures. And the response to that can't be more condoms that confirms the merit of the complaint. I think that's the harm. The harm is that he thinks he's wrongly tagged as a blood associate, and there are ways to attack that directly. Perthusia was not the sort of second level that we're dealing with here. But, okay, is he a blood associate? It seems to me that's the question that counts. And the effort to look at Rios' motivation, look, if he has a blood associate and Rios is right, now what exactly is the separate injury from the fact that Rios was motivated to make sure that the listing's blood associate was there, was because he knew that Hunt was trying to get out from under? I'm having a real trouble figuring out why it is this is a First Amendment claim as opposed to something that should be dealt with as to whether or not the listing's correct. Well, I mean, I think he brought it up personally just because he filed the grievance, and it was the response to Dan was Mr. Rios. Well, if we can't get behind the jury instruction, the jury referred him to this court. So one of the claims was that Rios had a story about what he said about this meeting, about what Hunt said about the meeting. Hunt said he didn't say that about the meeting. That's correct. So he claims that Rios only said that because he was now motivated to prove him associating and even if this was true, essentially. That's right. And therefore, he said, right, this is his claim. So it may well be that the jury didn't believe that. They believe Rios' version and not Hunt's version of that story, but we have no way of knowing that at this point. That's correct, Your Honor. So there is a version on which Rios was, because of the grievance, essentially making things up. That's right. That's the claim. Yes, that's right. That is the claim. Did you agree with Mr. Hunt? I'm sorry, did you agree with Mr. Hunt? I agree with him. Did he represent him at the meeting? He did. Absolutely. Okay. Absolutely. Did you agree with Hunt? Is that the instructions? That's right, Your Honor. Did you agree with Mr. Hunt? That's correct, Your Honor. No, I didn't. I know the counsel pointed to, on the record, the judge, the support judge did say he did a good job, and I agree. He did do a good job. He did have instructions. He did articulate what he had outlined in the right instructions. He just didn't do it quite technically right. That's right, yeah. The formalities of the procedure kind of alluded to that. But he did say there were no, he did say the objective standard and the rise of the motivating factor issue. He did say substantial or motivating factor, not moving force. In both instances, he had the right story. That's correct, Your Honor. Yes. Do you want to talk about the motivating force issue? Yes, Your Honor, I'd be happy to. My impression is that that comes out in denial cases, and it's about something completely else. It's not about what's going on in anybody's mind at all. It's not about a motivation issue. It's about who did this, essentially, whether it was the city or not the city. Right, that's correct. I agree. And it's also, you know, the point to the language, but, you know, as jurisprudence, we say don't use this instruction. Don't use this instruction in first amendment retaliation cases. And there's good reason for it. You know, the first amendment, the first amendment constitutional standard, it's a substantial motivating factor, right? It's a. With respect to this. Well, he's not much clearer than that, and I agree with you. That kind of makes all the sense in the world, and it's certainly where all this came from to use the standard. There are some cases where students are being angry and think it's a joke. No, I don't think you need it. I don't see it. You can talk about substantive standards, and you can say it's a phrase that makes sense, but there are points that do. There are some cases. That's a great point. We have about a minute left. Let's look about the cross-examination of Officer V. Trier, your client wanted to ask her about the fact that she had filed lawsuits, or he had filed lawsuits against her. Right, right, for sure. So she was the only third-party witness called in this case. So it was just Officer Rios, Mr. Trier, and Officer Fields. Mr. Hunt tried to question her about her previous status as a defendant in this case, just to show her bias and her motives for testifying. He also tried to question her about the fact that he said that he had filed a separate retaliation claim against her because of this lawsuit. And he actually won a filed lawsuit after a jury trial. And the jury didn't hear any of this, because the judge reviewed the question before it started on the grounds that it was unsubstantive. Had he won at the time of the trial? I'm sorry? Had he won at the time of the trial? Yeah, he had won. What did he get? How much did he get? A thousand dollars. But it was a good victory, for sure. But, you know, I think it's unquestionably relevant evidence, and, you know, the standard for abuse of discretion for this kind of testimony is, does the jury have enough to appraise the bias or motives of the witness? And it's clear that they did not. They didn't hear as crucial of this evidence. But I also... Do you consider the objection to Mr. Hunt explaining the basis for his question that he was looking into Fields' credibility? No, Your Honor. He got off the first question, which is, you know, were you a defendant in this case before that filed a lawsuit to you before? So he was hinting at that it was about credibility, but he did not outrightly say it was about credibility. I'm not surprised the district judge is eager to go back into the first lawsuit unless he understands what the point of the question is. I mean, I guess it's fair, but to me it's, you know, the rule says that testimony about bias is evidence, but bias should be admitted. Your Honor, as long as the district court understands what's the point of the question. That's fair, Your Honor. But, you know, before he even got a chance, he has one question that was objected to outside scope of draft, and I actually believe the district court judge volunteered the objection to the question in response. And so I think it would be reasonable for Mr. Hunt to assume that there's nothing he can do. Okay. You should have stopped talking. Thank you. Thank you. Good morning, Your Honor. So may it please the court. My name is Jill O'Brien, and I represent defendants David Rios and Deborah Fields. The jury verdict for defendant Rios should be upheld. The jury found that defendant Rios was not retaliating. He ordered his staff to document gang activity or communication by any inmate on the general population yard, not just Mr. Hunt. Just as defendant Rios was not retaliating in giving his staff that instruction, defendant Fields was not retaliating when she followed the instruction and documented a gang meeting that she observed over a month later. How do we know what the jury decided this case on? Since they were instructed on a number of elements, one of them being whether it killed Mr. Hunt's conduct. And you were not trial counsel, but trial counsel specifically argued that it was subject to an objective standard, which is contrary to the law. How do we know that that was the jury point for the jury rather than whether or not Officer Rios had a retaliatory intent? Defendant's counsel below argued in closing that he hadn't, his rights hadn't been chilled. And also, Excuse me, there was no defense against you. The defendant's counsel below argued that he didn't present evidence of chilling, but the second half of her sentence was, and he didn't present evidence that any reasonable inmate would be chilled. In closing, she cited the proper standard as well. And here, adding the extra five words about whether a person of ordinary firmness would have been chilled, wouldn't have changed the jury's verdict and didn't affect substantial rights because Mr. Hunt didn't present any evidence for the jury to apply that instruction to. Here, Ordinarily. Does anybody ever do that? Ordinarily. Excuse me. Just a minute. You said essentially a reasonable inmate standard, a reasonable person standard, which ordinarily there is left to the jury to decide what a reasonable person would do. Yes, Your Honor. This court has held that it's a reasonable inmate standard. And there is easy evidence for Mr. Hunt to have been on because he was a persistent inmate. He could have talked about what other inmates in his experience had done, what had happened to him before. There is absolutely. I'm suggesting that it's not the kind of standard that would ordinarily include evidence. Well, it's one of the five elements required for Mr. Hunt to prove under. Right. And if, for instance, he included evidence not about what other, what a reasonable person could have done in terms of what other people would have reacted, I thought in general, the jury is the reasonable person and they decide. In inmate retaliation cases, chilling or whether an inmate would have felt his rights chilled is a requirement. And it's because of the injury argument, you were. Requirements to which you need discreet evidence as to how people would react. I'm sorry. He said a requirement has to be discreet evidence as to how other people would react. If he's going to argue that it's affected substantial rights, he needs to show the effect on substantial rights because it requires evidence as to how a reasonable inmate would have reacted. I've never seen that. If there's an error for the jury to not have considered this language, the jury would have needed something to apply the language to. I think they could have just looked at what happened to him and said, you know, that's, I mean, this guy's tough and you know, he can stay with him, but a reasonable inmate will, will make them have their rights chilled. You don't have to have separate evidence for someone to come in and say, I got something like that happened to me and I never filed another grievance again. If they were doing that and they listened to both of the closing arguments, then there wouldn't have been an error because in that situation, Your Honor, they wouldn't be looking at the proper standard and looking at the evidence that was presented at trial. Mr. Hunt knew the proper standard. He argued it in closing and yet he failed to object when the district court read him the proposed instruction, nor did he object when the judge instructed the jury on the chilling factor. We argue that it under the doctrine of invited error, Mr. Hunt, I'm sure he didn't invite him because he, whenever he argued it, instead he started to argue it in the other way. The worst thing he might've done is he's not with a judge club judge and he certainly didn't invite him. He, he, he said nothing when the district court read his proposed instruction. It's not invited, not making a waiver, but invited is when you push something forward and tell the court do this. He didn't do that, did he? Invited error requires a knowing waiver of his rights and he knew the proper standard. And he either didn't see any distinction between what the judge gave and what he thought it was a foregone conclusion because he already said it plenty of times and the judge didn't do it. He hadn't said it plenty of times, your Honor. When the judge read the instruction outside the presence of the jury in the morning, while the instructions were being discussed, there was no discussion of chilling. He waived this issue. And if you do that, review it, you review it for plain error. If you hear earlier, when I talked to the representative of the department of justice, your job is not just to do cases, but to make sure that the substance is done. If your assistant attorney general is taking advantage of having a pro se person on the other side and pushing forward instruction, it's not correct. Doesn't that bother the attorney general, her office, not only his office. It would, but that's not what happened here, your Honor. This isn't a case like Jess versus Debbie, where the court defense council knows about and has a discussion about potential prejudice to the plaintiff. Nobody objected. And the court didn't realize what, that there was an issue for the, to be here before you propose the instruction. It's, it's unclear how the court formulated the instruction. There is no model instruction on inmate retaliation. Mr. Hunt had proposed an instruction six months before in July, the trial was in January, but Mr. Hunt represented was a joint instruction when it was not. Why did you have to be a separate? Is, is there a model instruction on inmate retaliation in general? There's one for public employees and one for private citizens. And what's the difference? The elements are different. For example, legitimate penological interest can come into play with the private citizen. As to this, what's the difference? Well, it's chilling. Also, Mr. Hunt had to prove that his rights were chilled and, and more than an inmate of ordinary firmness. For the regular instruction, it comes up in the motivating factor prompt. The prompts are very different. If you look at the model instructions compared to the language of Rhodes. But here, so. What about the motivating force? As far as the pretrial order? Quotations. Quotations. The motivating force. So Mr. Hunt is, again, he did not raise this objection at trial. So it is reviewed. If at all, under a standard of plain error, he has to prove that it affected his substantial rights. And it's his burden under CB versus City of Sonora. And it's the difference between the language of substantial or motivating factor versus motivating force. It's not so different than it would have. There's a whole, you know, there are probably 500 cases. The difference between a substantial or motivating factor, which is essentially a dual motive constraint, and moving force, which comes out of healing to first line of cases, and nothing to do with this, comes out of the male cases. The jury was hearing moving force and motivating factor. And there's nothing to indicate that the jury knew of any of these cases or the, that you're referring to. The instructions. Well, there's a substantial or motivating factor. Substantial. I mean, essentially, it necessarily uses a factor. Yes, they got that and the other instruction. And neither party objected. And the court would not have known it was making, doing something it wouldn't have, because it wasn't using the instructions for a public inquiry. I thought that the instructions of first line retaliation, the moving forces. That's right, Your Honor. But the court wouldn't have been looking at those because it was an inmate case. I don't understand this whole process. The court, the court was looking at roads. He cited roads as the authority for the instruction that he gave. It was not looking at the instruction for a private citizen or a public employee, because those have three elements, for example, as opposed to five, don't include the legitimate, the illogical interest. This, Mr. Hunt, this case was ultimately about whether. Ms. Sergeant Rios had a legitimate, the illogical interest. And that's what motivated his documentation of hunt. Or if he was motivated by retaliation, Mr. Hunt knew that that was the central argument here. That's why he didn't object on the basis of substantial rights to the chilling instruction. He didn't see a difference between what the judge gave and what would matter to the jury. He didn't object. And he, he and defense counsel, both are get the correct standard to the jury. There was no evidence for the jury to, if the jury had had an instruction about what a reasonable inmate would have thought, there was no evidence about what a reasonable inmate would have thought. Mr. Hunt. Do you have any cases? I have a case not in the inmate context, but this court in the United States versus Anderson held that a failure to give a jury instruction, even if it's error does not seriously affect the fairness and integrity of proceedings. If there's not testimony pertaining to the admitted instruction, I know, but I want to know specifically as to this structure, do you have a case that says that there needs to be evidence that the evidence is posed to the jury? We can do a legal decision on the question of how a reasonable inmate would react. I would be spoke personally. I don't know if you do this or any cases. I would point to Brodheim and Kate Rose cases that indicate that it has to be a reasonable inmate. I understand that, but I want to know whether there has to be evidence. That seems to be your key point. There has to be other evidence other than with regard to this person. As to how a reasonable inmate would react. Is there any case that says that? CB versus city of Sonora says that to affect substantial rights, there has to be an effect on substantial rights that would come from what the jury's going to do with the instruction. And if the jury is going to try to apply the instruction, it needs some evidence to apply it. That's not in this context. Well, I would argue in this context also that if Mr. Hunt is, I'm sorry. You're not answering the question. This is essentially, is this an evidentiary standard or is it a legal standard that the jury applies on its own based on its understanding of how reasonable people behave? Oh, yes, it is an evidentiary standard. Mr. Hunt must prove the five elements of retaliation, and he must provide evidence of that. And it took. I have no case in which it's ever been said that there was insufficient evidence on the extent of reasonable person standard. Your Honor, I have Rose versus Robinson that says it's Mr. Hunt's burden to prove these five elements. And through presenting evidence to the jury of those, I want to talk about defendant fields. Summary judgment for defendant fields was proper because. I want to go back to your question. Okay. So that is your only point waiver that he didn't write, that he didn't have? No, Your Honor. It was waived. So you, the only review you have discretionary plain error review, if you find that you should exercise your discretion. And it was not an abusive. I'm sorry. It's an abusive discretion standard. And it was not an abusive discretion by the court because a lawsuit against defendant fields is not relevant to whether Sergeant Rios retaliated. Mr. Hunt. Mr. Hunt. Your Honor, this is her bias, whether Sergeant Rios retaliated. And it's not the way this is called. It's the way this is dealt. Bias that that witness may have is a factor for the jury to consider, unless there's some sort of countervailing overwhelming argument about prejudice or irrelevant, or there's no evidentiary basis for it. But what would have been a reason for not allowing him to say, did I see you on a suit? Because Your Honor, three things. So it's within Hunt's control who he sues. It's not like the kind of association that was a preexisting relationship between these two that would show bias. If Hunt can sue, control who he sues and then accuse that person of bias on the stand, that would be very prejudicial to defendants. And it's solely within Hunt's control. The cases that Hunt cites on this issue, for example, United States versus Abel was a gang case where the two, the two witnesses were in the same gang. That's not a determination that was made by the plaintiff in that case. Here, Mr. Hunt was, was trying to do guilt by association, for lack of a better term. And the district court did not abuse its discretion in not allowing it, particularly when Mr. Hunt is within Mr. Hunt's control, whom he sued. If you say on a jury, would you be interested in whether or not this was a completely neutral objectivity plaintiff, although a co-worker of the defendant versus a co-worker of the defendant, who this particular plaintiff had already sued and defeated once and sued in this very case. And she might have a little grudge against him after that. No, Your Honor. Well, as you pointed out, he knew that they were co-workers, that Sergeant Rios was her supervisor. Just as the court would not have allowed a description of her being a participant in the lawsuit beforehand, it shouldn't have allowed a discussion of prior cases against her. It's very similar to character evidence. Proving that she retaliated against him in some other situation means that she and somehow imputed to Sergeant Rios is retaliating against him here. It would have been prejudicial. Proving that she had retaliated against him previously is proving that the adversary is in a lawsuit in which he prevailed. And to that I would just say that's what the defendant has control. If he is trying to use the jury verdict against her, that is retaliation in another situation on other facts. But if he can control whom he sues, he can show bias at his pleasure against whomever. Well, that's an argument. In other words, it seems to me that he should be able to cross himself. I mean, the lawyer for the defendant should be able to argue what you're arguing now, which is, well, that's show bias. It only shows in the end. And so on. And Hunt did not ask to approach. He did not make this objection at trial for the district court to determine what he was trying to get at. Mr. Hunt also talks about Defendant Fields' chrono, claiming that it referenced the grievance. It does not. It references him trying to get off this list of affiliated blunts, but it does not reference the chrono. I see my time is up. Thank you. Thank you very much. Do you want to add anything? Thank you. I just want to address a couple points briefly. So the tele-effects construction. So it is true that both parties objected, argued for the objection standard in the closing arguments. That's true. But, you know, when there's an instruction that's correct, the instruction is contrary. But just for the jury, I mean, the jury is going to apply the facts that it knows based on the instructions of the jury. I had Hunt before me to judge right out of the instructions. And, again, we have our articulator. He's objected to the standard. Yes, Your Honor. May I touch? It is proposed to read instructions at the correct standard. It is a pretrial statement at the correct standard. And actually, both parties' pretrial statements are at the correct standard. And also, early on in the case, the defendants actually moved to dismiss the complaint once it sat around. They claimed that his speech actually chilled, and therefore dismissed the complaint. And the district court denied that motion because of the speech chrono and wrote that says, no, it's not an actual chilling standard. Your Honor, I have a question about whether there is any requirement to apply to defendants with regards to objections to the standard 16. Sure, Your Honor. As you say, there's no case that I'm aware of, and Ms. O'Brien is not aware of either, that makes that requirement. And, in fact, in their brief, they argue that actual chilling is relevant to what an ordinary inmate would do. Well, I think it's relevant, but the question is sufficient. She's arguing it's not sufficient. There is, in my knowledge, no authority for that position. And also, I would say it's inconsistent with the case that we discussed earlier, which is you can just set up such a solvent just by showing more than minimal harm. All right. One last question is whether the same question with regard to the moving force question, did your client articulate the correct standard before the jury instruction was given? It was, right? Yes, sir. He articulated the standard motivating factor standard correctly. The moving force standard didn't even apply until the trial, and so the jury instruction was a trial. Okay. Thank you very much. Thank you both for your argument.  Recess. Thank you. Thank you.
judges: Berzon, Clifton, Lasnik